IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS GRANT WOLVERTON,   No. 2:13-CV-2035-WBS-CMK

    Plaintiff,

  vs.   FINDINGS AND RECOMMENDATIONS

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

_____/

    Plaintiff, who is proceeding with retained counsel, brings this action under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security. Pending before the court are plaintiff's motion for summary judgment (Doc. 15) and defendant's cross-motion for summary judgment (Doc. 16).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. PROCEDURAL HISTORY

Plaintiff applied for social security benefits on August 11, 2010. In the application, plaintiff claims that disability began on August 9, 2010. Plaintiff's claim was initially denied. Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on February 22, 2010, before Administrative Law Judge ("ALJ") Christopher R. Inama. In a March 14, 2012, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1. The claimant has the following severe impairment(s): Rheumatoid arthritis in both hands and knees;

2. The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3. The claimant has the following residual functional capacity: The claimant can perform sedentary work; he can sit 6 hours and stand/walk for 2 hours; he can list/carry 10 pounds occasionally and frequently;

4. Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

After the Appeals Council declined review on August 13, 2013, this appeal followed.

# II. STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996). It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971). The record as a whole, including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence.  See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).  Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

### III.  DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to articulate sufficient reasons for rejecting the opinion of treating physician Dr. Del Paine; and   (2) the ALJ's residual functional capacity assessment is flawed because the ALJ failed to consider the effects of plaintiff's severe impairment of arthritis in both hands on his ability to engage in handling, fingering, and feeling.[1]

**A.     Evaluation of Medical Evidence**

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285

---

[1]     While plaintiff states that he does not concede any issue with respect to the ALJ's adverse credibility finding and that he strongly objects to such finding, plaintiff does not offer any specific argument challenging the ALJ's credibility finding.

1  (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given
2  to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4
3  (9th Cir. 1990).
4    In addition to considering its source, to evaluate whether the Commissioner
5  properly rejected a medical opinion the court considers whether:  (1) contradictory opinions are
6  in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an
7  uncontradicted opinion of a treating or examining medical professional only for "clear and
8  convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.
9  While a treating professional's opinion generally is accorded superior weight, if it is contradicted
10 by an examining professional's opinion which is supported by different independent clinical
11 findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035,
12 1041 (9th Cir. 1995).  A contradicted opinion of a treating or examining professional may be
13 rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester,
14 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of
15 the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a
16 finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and
17 legitimate reasons, the Commissioner must defer to the opinion of a treating or examining
18 professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional,
19 without other evidence, is insufficient to reject the opinion of a treating or examining
20 professional.  See id. at 831.  In any event, the Commissioner need not give weight to any
21 conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111,
22 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion);
23 see also Magallanes, 881 F.2d at 751.
24    As to Dr. Del Paine, the ALJ stated:
25   [In a] report dated September 29, 2009, Dennis W. Del Paine, M.D., a
    rheumatologist who has treated the claimant, reported that the claimant
26   had rheumatoid arthritis.  He further reported that the claimant should not

4

work more than an 8-10 hour workday and not more than 40 hours per week. In August of 2010, the claimant complained of continued stiffness in the morning lasting 30 minutes to one hour, which is worst in his shoulders and elbows. He is awaked at night two times a week with shoulder pain [Exhibit 5F]. In a progress note dated November 22, 2010, the claimant reported his pain level as manageable at a 3-4 out of 10. He has occasional swelling in his metacarpophalangeal and pain in his feet with prolonged standing [Exhibit 5F]. On July 19, 2011, Dr. Del Paine noted the rheumatoid arthritis was "improved." The claimant reported minimal morning stiffness, no problems with his current medications, and no new rheumatologic complaints. During a physical examination in October of 2011, the claimant reported minimal morning stiffness. He complained of some pain in his shoulders with activity. There were no new rheumatologic problems noted. He further complained of foot pain which worsens with prolonged periods of standing. On December 23, 2011, the claimant reported his arthritis was essentially "well maintained." He has more good days than bad days. He has occasional symptoms mainly at the plantar insertions [Exhibit 12F].

      \* \* \*

. . .Dr. Del Paine did not make any indication referring to the severity of the claimant's arthritis. His impression and plan included symmetric polyarthritis with positive rheumatoid factor. The claimant was given Norco, a pain medication, and instructed that he could not drive a truck while he was on the prescribed drug [Exhibit 5F]. . . .

      \* \* \*

. . .Dr. Del Paine completed a Residual Functional Capacity Questionnaire, dated May 27, 2011, opining the claimant can sit, stand, or walk less than 2 hours during an 8-hour workday, with the ability to shift positions and take unscheduled breaks throughout the day; lift or carry 10 pounds rarely and less than 10 pounds occasionally; occasionally twist or stoop, rarely crouch, and never climb ladders or stairs; is limited in repetitive reaching, handling, or fingering; and would likely miss more than four days of work a month due to his impairment or treatment [Exhibit 11F]. I give little weight to Dr. Del Paine's opinion, as it is overly restrictive and not supported by the evidence of record. In a report dated July 19, 2011, just two months after this opinion, Dr. Del Paine noted the rheumatoid arthritis was "improved." The claimant reported minimal morning stiffness, no problems with his current medications, and no new rheumatologic complaints. In a function report dated October 27, 2010, the claimant, himself, indicated he can lift 25 pounds. Furthermore, the claimant's reported activities of daily living indicate that he is far more capable than was described by Dr. Del Paine.[2]

---

[2] As to daily activities, the ALJ noted:

. . .[H]e has reported the following daily activities: stretching, loosening

5

1  Plaintiff argues that the ALJ erred by rejecting Dr. Del Paine's opinion in favor of the opinion of
2  a non-examining general practitioner, Dr. Hicks.[3]

3        The court does not agree.  At the outset, the court notes that Dr. Del Paine's
4  opinion is contradicted by clinical findings made by another of plaintiff's treating physicians, Dr.
5  Patel, who noted in October 2010 and October 2011 that plaintiff was in no apparent distress,
6  that he had normal musculature, and that there was no skeletal tenderness or joint deformity.
7  Given Dr. Patel's contradictory findings, the ALJ was not required to defer to Dr. Del Paine's
8  opinions and was permitted to rely on the opinion of a non-examining source, namely Dr. Hicks.

9        Additionally, as noted by the ALJ, Dr. Del Paine's opinion is minimally supported
10 by the doctor's own notes and, in some instances, is inconsistent with those notes.   For example,
11 in November 2010 plaintiff reported that his pain was manageable and that he had only minimal
12 swelling in his fingers.  By July 2011, Dr. Del Paine reported that plaintiff's arthritis had
13 improved and plaintiff reported minimal stiffness.  By December 2011, plaintiff reported that his
14 arthritis was well-maintained.

### B.   Residual Functional Capacity Assessment

16       Residual functional capacity is what a person "can still do despite [the
17 individual's] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v.
18 Heckler, 751 F.2d 1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current
19 "physical and mental capabilities").  Thus, residual functional capacity describes a person's
20 exertional capabilities in light of his or her limitations.  Plaintiff argues that the ALJ's residual
21 functional capacity assessment is flawed because there is no discussion of manipulative

---

up, showering, completing light chores, going to the gym, making lunch, taking a nap, eating dinner, resting, and going to bed.  The claimant can independently maintain his own personal hygiene and prepare his meals.  He drives and rides in a vehicle.  He shops twice a week for 30-minute durations [Exhibit 4E]. . . .

[3]   Dr. Hicks' opinion mirrors the ALJ's residual functional capacity assessment.

limitations.

The court finds no error. As defendant correctly observes, plaintiff's argument hinges on the ALJ's assessment of Dr. Del Paine's opinion because Dr. Del Paine is the only doctor who opined that plaintiff has manipulative limitations of any kind. For the reasons discussed above, the court finds that the ALJ properly analyzed Dr. Del Paine's opinion. Given that the ALJ did not err in rejecting Dr. Del Paine's opinions, including those related to manipulative limitations, and given that no other doctor opined that plaintiff has such limitations, the ALJ did not err by failing to discuss such limitations.

## IV.  CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, the undersigned recommends that:

      1.    Plaintiff's motion for summary judgment (Doc. 15) be denied; and

      2.    Defendant's cross-motion for summary judgment (Doc. 16) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  October 10, 2014

                                                    **CRAIG M. KELLISON**
                                                    UNITED STATES MAGISTRATE JUDGE